UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

In re:

LESLIE FERNANDEZ-LOPEZ,

       Debtor.

_____/

Case No. DL 14-01520
Hon. Scott W. Dales
Chapter 7

LESLIE FERNANDEZ,

       Plaintiff,

v.

Adversary Pro. No. 20-80069

NATIONAL COLLEGIATE STUDENT
LOAN TRUST 2006-2, a Delaware Statutory
trust, TRICIA N. MCKINNON, SHERMETA
LAW GROUP, PLLC,

       Defendants.

_____/

<u>MEMORANDUM OF DECISION AND ORDER</u>

PRESENT:   HONORABLE SCOTT W. DALES
               Chief United States Bankruptcy Judge

## I.     INTRODUCTION

In this student loan dispute the plaintiff Leslie Fernandez seeks a declaration that her debt to defendant National Collegiate Student Loan Trust 2006-2 ("NCSLT") was discharged in her chapter 7 bankruptcy proceeding, and NCSLT and its lawyers, defendants Shermeta Law Group and Tricia McKinnon, violated the discharge injunction by garnishing her wages and income tax refunds to collect a prepetition judgment. In response to the request for declaratory relief and damages, the Defendants answered the Plaintiff's First Amended Complaint to Determine Dischargeability of Education Loans Under 11 U.S.C. 523(a)(8) (ECF No. 9, the "Complaint")

and filed motions[1] seeking an order dismissing the adversary proceeding, either under Rule 12(b)(6), 12(c), or Rule 56[2] based on (i) recitals within the loan documents, and (ii) the doctrine of collateral estoppel. Relying on either approach, the Defendants contend that the debt at issue is excepted from discharge under § 523(a)(8), and because Plaintiff's prayer for relief depends on a contrary finding, they seek dismissal of the Complaint.

Significantly, the Plaintiff does not contend that repaying the loan imposes an "undue hardship" (as in most student loan controversies); instead, she argues that the loan itself fails to meet the definition of a "qualified education loan," making § 523(a)(8)(B) inapplicable.

For the following reasons, the court will deny the Defendants' Motions.

## II.     JURISDICTION AND AUTHORITY

The United States District Courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code, 11 U.S.C. § 101, et seq. (the "Bankruptcy Code"). 28 U.S.C. § 1334(a). The district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under the Bankruptcy Code or arising in or related to cases under the Bankruptcy Code. 28 U.S.C. § 1334(b). District courts may, however, refer these cases to the bankruptcy judges for their districts. 28 U.S.C. § 157(a). In accordance with 28 U.S.C. § 157(a), the United States District Court for the Western District of Michigan has referred all of its bankruptcy cases and proceedings, including Ms. Fernandez's chapter 7 case and this adversary proceeding, to the Western District's bankruptcy court. L. Gen. R. 3.1 (W.D. Mich.). Because the

---

[1] *See* Defendants Shermeta Law Group, PLLC and Tricia N. McKinnon's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), or, in the Alternative, for Summary Judgment Pursuant to Fed. R. Civ. P. 56 (the "Shermeta Motion," ECF No. 18) and Defendant National Collegiate Student Loan Trust 2006-2's Motion for Judgment on the Pleadings (the "NCSLT Motion," ECF No. 20, and with the Shermeta Motion, collectively the "Motions").

[2] The court will refer to any Federal Rule of Bankruptcy Procedure or Federal Rule of Civil Procedure simply as "Rule ___," relying on the numbering convention for each set of rules to signal the intended reference. In addition, unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

controversy involves the determination of the dischargeability of the debt and the scope of Ms. Fernandez's discharge, the adversary proceeding is a "core proceeding" over which the bankruptcy court has plenary authority, including authority to enter a final judgment at the conclusion of the matter. No party has suggested otherwise.

### III.   FACTS ACCEPTED FOR PURPOSES OF THESE MOTIONS

The following facts come mostly from the Complaint or documents necessarily referenced within it. On March 19, 2006, the Plaintiff borrowed $26,890.00 as a private student loan at an interest rate of 9.740% from JP Morgan Chase Bank (the "Bank") (ECF No. 18-2, Exh. A, p.1), and the Bank eventually assigned the loan to NCSLT (ECF No. 18-3, Exh. B, ¶ 3). Her father, Rogelio Banos ("Mr. Banos"), co-signed the loan and agreed not to use any of the funds. (ECF No. 18-2, Exh. A, p.3, ¶ L.2). The Credit Agreement governing the loan, which Ms. Fernandez and her father signed, recites that she was planning to attend Owens Community College for four months, from August to December 2006, and that she lived in Toledo, Ohio, while her father lived in Lansing, Michigan. (ECF No. 18-2, Exh. A, p.2). She alleges that the cost of attendance for one semester was $7,467.00, less $1,312.00 which she funded with federal loans. (ECF No. 9 ¶ 14). In other words, Ms. Fernandez borrowed nearly $27,000.00 from the Bank to attend a single semester at a community college near her home in Toledo, though the tuition was only about a third of the loan amount.

The loan documents characterized the loan as an education loan, but neither the Plaintiff nor the Bank sought certification from the Community College as to the cost of attendance, nor did the Bank disburse the loan proceeds directly to the school. Instead, according to the Note Disclosure Statement associated with the loan, the Bank disbursed $26,890.00 to Mr. Banos, after deducting an origination fee in the amount of $1,869.36 (ECF No. 18-1, Exh. A).

On February 19, 2013, the Defendants filed a six-paragraph complaint (ECF No. 18-3, Exh. B) in the Circuit Court for Ingham County, Michigan (the "State Court") against Ms. Fernandez and her father alleging that their contract was a "student loan" (*Id*. at ¶ 2); that the father and daughter defaulted (*Id*. at ¶ 5); and that they owed NCSLT $44,163.37 (*Id*. at ¶ 6).[3] Plaintiff's father, who by then had received a chapter 7 discharge, responded to the State Court complaint, but the Plaintiff (who had not yet filed a bankruptcy petition) did not respond, and instead suffered a default.

On June 11, 2013, the State Court entered a default judgment against the Plaintiff for $44,471.19 (which included costs and interest) on the standard State Court Administrative Office approved form (ECF No. 18-4). The default judgment, evidently prepared by NCSLT's counsel, recited that the "judgment resolves the last pending claim and closes the case . . ." contrary to M.C.R. 2.604 (Judgment in Actions Involving Multiple Claims or Multiple Parties) -- the case obviously continued as to Mr. Banos. Indeed, shortly after preparing the default judgment and while garnishing Ms. Fernandez's wages starting in July 2013 (ECF No. 9, Complaint, Exh. A at p.14), NCSLT's counsel filed a motion for summary disposition against Mr. Banos on or about August 2, 2013 (the "State Court Motion"). In the State Court Motion, NCSLT challenged Mr. Banos's defense that the debt had been discharged in his chapter 7 bankruptcy case in 2010. (ECF No. 18-5, Exh. D, p.3, ¶ 14). NCSLT argued in State Court that "[a]s a qualified education loan [the debt] is excepted from discharge pursuant to 11 U.S.C. § 523(a)(8)" (*Id*. at ¶ 24); that Mr. Banos had never filed an adversary proceeding in his bankruptcy to qualify for an undue hardship (*Id*. at ¶ 26); and that he had never responded to NCSLT's request for admissions, thereby permitting the court to treat the request for admissions as admitted (*Id*. at ¶¶ 30 and 31). For all

---

[3] The remaining two paragraphs addressed the appropriateness of jurisdiction and venue and stated that NCSLT had complied with the Credit Agreement.

these reasons, NCSLT asserted there was no genuine issue of material fact regarding the nature of the debt as a "qualified education loan" and summary judgment would be proper. The State Court agreed and issued a judgment against Mr. Banos on September 25, 2013. (ECF No. 18-6, Exh. E, p.3).

Ms. Fernandez filed a chapter 7 bankruptcy petition on March 10, 2014, several months after the entry of the State Court's separate judgments against her and her father. She received a chapter 7 discharge on August 4, 2014, roughly a year after the entry of the State Court's judgments. In other words, prior to entry of the State Court's judgments, Ms. Fernandez could not assert her bankruptcy discharge as a defense to the action, though her father could (and did).

On April 4, 2016, nearly two years after the entry of Ms. Fernandez's discharge, the Defendants persuaded the State Court to reopen the Ingham County action to pursue collection, and for nearly four years the Defendants obtained and executed several garnishment writs against Ms. Fernandez's wages and tax refunds. Ms. Fernandez did not assert her discharge in response to the writs of garnishment, and she agreed to make payments despite her belief that the debt was discharged in 2014.

On June 6, 2020, she commenced the present adversary proceeding alleging that her debt to NCSLT should be discharged because the loan was not a qualified education loan as required under § 523(a)(8)(B) and therefore subject to discharge. Ms. Fernandez also challenges the Defendants' assertion of the doctrine of collateral estoppel, even though the State Court made a determination against her father involving the very same loan at issue in this adversary proceeding. She asserts that the precise issue raised against her in the State Court was not the same as that raised in the bankruptcy case because the only determinations the State Court made *against her* involved her breach of the loan agreement and the amount of damages. She also denies that the

nature of the debt was "actually litigated" against her in the State Court, arguing that there must be something more than an *opportunity* to litigate -- contested, actual litigation is a prerequisite to applying collateral estoppel. She did not contest the allegations before the State Court, she defaulted. Furthermore, she points out that the Defendants filed the State Court Motion and prepared the subsequent judgment against her father after the State Court issued its default judgment against her. Under the circumstances, she argues that whatever findings the State Court made against Mr. Banos have no bearing on the issues in her case.

## IV.    ANALYSIS

### A.    Standards Under Rule 12(b)(6), Rule 12(c) and Rule 56

In general, "[t]he standard to grant a judgment on the pleadings is the same as that for a motion to dismiss made under Federal Rule of Civil Procedure 12(b)(6)." *Huntington Nat'l Bank v. Bruinsma (In re Kentwood Pharmacy, L.L.C.)*, 475 B.R. 602, 605 (Bankr. W.D. Mich. 2012).[4] A motion to dismiss under Rule 12(c) tests the legal sufficiency of a complaint and assumes all the factual allegations in the complaint are true. "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (internal citation and quotation marks omitted). Before a court grants such a motion, it must be certain that the moving party is "entitled to judgment as a matter of law." *Id.* at 582 (internal citation and quotation marks omitted); *see also Tucker v. Middleburg-Legacy Place, LLC*, 539

---

[4] It is fair to say, however, that a motion under Rule 12(b)(6) tests the pleading of the claim -- whether the plaintiff has *stated* a claim -- while a motion under Rule 12(c) scrutinizes more directly the merits of the claim, not just its articulation. Naturally, the court is more hesitant to dispose of a claim on the merits in a summary manner, as opposed to the statement of the claim, which usually involves leave to replead.

F.3d 545, 549 (6th Cir. 2008). When addressing a motion for judgment on the pleadings, "the trial court is required to view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." 5C Fed. Prac. & Proc. Civ. § 1368 (3d ed.) (collecting cases).

Courts review summary judgment motions under Rule 56 using a similar standard, again drawing inferences against the moving party. Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Bankr. P. 7056 (incorporating Fed. R. Civ. P. 56); *McCafferty v. McCafferty (In re McCafferty)*, 96 F.3d 192, 195 (6th Cir. 1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The evidence and all reasonable inferences must be construed in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 578 (1986); *Redding v. St. Edward*, 241 F.3d 530, 532 (6th Cir. 2001). Because the Defendants filed their motions to dismiss and for summary judgment, the court will consider the motions according to these standards and will draw all inferences in favor of the Plaintiff.

The Plaintiff contends that her obligation to NCSLT is not a qualified education loan within the purview of § 523(a)(8)(B) in the first place, not that repaying the loan imposes an undue hardship. In response to the Motions, she contends, and the Defendants conceded during oral argument, that they must shoulder the burden of proving that the debt falls within the exception before the Plaintiff has any burden in responding. *Conti v. Arrowood Indemnity Co.*, 982 F.3d 445, 448 (6th Cir. 2020) ("In any § 523(a) analysis, '[t]he creditor . . . bears the burden of proving by a preponderance of the evidence that a debt is excepted from discharge.'") (citations omitted).

In their Motions, the Defendants argue that Ms. Fernandez's debt qualifies for the exception to discharge either based on the preclusive effect of the proceedings in State Court or based on the documents incorporated into the pleadings (or the summary judgment record).

The parties have not presented matters outside the pleadings (or not incorporated therein by reference),[5] and the Defendants argue under each motion that they are entitled to judgment as a matter of law. Ms. Fernandez does not have any burden in responding to the Motions unless, with respect to the Rule 56 motion, the moving party (NCSLT) meets its initial summary judgment burden, and does so without requiring the court to draw inferences in its favor. *See Conti*, 982 F.3d at 448 (initial burden of proof on creditor under § 523(a)(8)); *In re Bronsdon*, 435 B.R. 791, 796 (B.A.P. 1st Cir. 2010) (same).

### B.  Res Judicata and Collateral Estoppel Issues

#### 1.  *Collateral Estoppel Effect of Default Judgment*

At oral argument the court and the parties discussed whether a true default judgment can meet the "actually litigated" requirement of the usual formulation of the doctrine,[6] and although the court continues to find the majority opinion in *Phillips v. Weissert (In re Phillips)*, 434 B.R. 475 (B.A.P. 6th Cir. 2020), more persuasive than the concurring opinion, even the Defendants' more extravagant view of collateral estoppel in the context of true default judgments requires the

---

[5] The court will ignore for now the reference to attorney trial notes of a hearing before the State Court included within the Defendants' post-hearing *memorandum of law*. *See* Defendants' Joint Supplemental Brief Pursuant to the January 11, 2021 Post-Argument Briefing Order (ECF No. 37, the "Defendants' Supplemental Brief") at pp. 2 and 5; Fed. R. Civ. P. 12(d) (suggesting that the court may exclude from its consideration of a Rule 12(b)(6) or 12(c) motion matters outside the pleadings).

[6] Under Michigan law, collateral estoppel precludes re-litigation of an issue in a subsequent, different cause of action between the same parties where the prior proceeding resulted in a valid, final judgment and the issue was (1) actually litigated and (2) necessarily determined. *McCurdie v. Strozewski (In re Strozewski)*, 458 B.R. 397, 404 (Bankr. W.D. Mich. 2011) (citing *People v. Gates*, 452 N.W.2d 627, 630 (Mich. 1990)).

court to find that the issue to be established in the later proceeding was "necessarily determined" in the earlier. *See Gates*, 452 N.W.2d at 630; *Rohe Scientific Corp. v. Nat'l Bank of Detroit*, 350 N.W.2d 280, 282 (default judgment is "conclusive only as to those matters essential to support the judgment"), *modified on other grounds on reh'g* 355 N.W.2d 883 (Mich. App. 1984).

Here, the only judgment in the record that names Ms. Fernandez, the State Court's June 11, 2013 default judgment (ECF No. 18-4), did not necessarily determine the nature of the loan, only that Ms. Fernandez breached her contract and owed $44,471.19 to NCSLT as of its rendition. The nature of the debt as a student loan was immaterial to that judgment.

Moreover, at the time the State Court rendered that judgment, Ms. Fernandez had not even filed a bankruptcy petition, let alone received a discharge, so the State Court had no reason to determine the hypothetical question that the debt as to Ms. Fernandez would be excepted from discharge in a later proceeding. As the United States Supreme Court concluded in a related context, "[c]onsiderations material to discharge are irrelevant to the ordinary collection proceeding" and "[i]t makes little sense . . . to resolve a federal dischargeability question according to whether or not the parties in state court waived their right to engage in hypothetical litigation in an inappropriate forum." *Brown v. Felsen*, 442 U.S. 127, 136 (1979). Although *Felsen* involved a debtor's assertion of state preclusion doctrine against a creditor, "turnabout is fair play."

At oral argument, the Defendants contended that the nature of the debt as a student loan was indeed necessary to the entry of the later judgment against Mr. Banos, who had asserted his discharge, and that under Michigan's version of the single-judgment rule, M.C.R. 2.604, Ms. Fernandez is bound by that judgment as a party to the proceeding.[7]

---

[7] The court will separately address the Defendants' argument that Ms. Fernandez is bound by this later judgment as her father's privy. *See infra* Part IV.B.2.

At this stage of the proceedings, and drawing inferences in favor of the non-moving party, it is certainly conceivable that the Defendants waived, or should be estopped from asserting, M.C.R. 2.604's single judgment rule when they evidently prepared a separate judgment against Ms. Fernandez indicating to her that it was in fact a final judgment and later prepared an entirely separate judgment against Mr. Banos, after the State Court granted their summary judgment motion. *See generally Estate of Reed v. Reed*, 810 N.W.2d 284, 290-91 (Mich. App. 2011) (discussing waiver and estoppel). According to the State Court's docket, not only did the Defendants prepare the judgment against Ms. Fernandez as if it were a final judgment, they commenced execution while the main action remained pending against her father, obtaining a writ of garnishment against her wages on July 18, 2013.  (ECF No. 9, Complaint, Exh. A at p.14). Courts frown on the practice of creating error at one stage of a proceeding and raising the error to gain advantage at another. *Cf. Vulpina, LLC v. Dzierzawski*, Slip Op. No. 351472, 2020 WL 7754163 (Mich. App. Dec. 29, 2020) (refusing to permit litigant to obtain a better outcome at later stage of proceeding by inviting error at earlier stage). Here, the Defendants clearly treated the first judgment as final and the court will not allow them to gain an advantage by arguing otherwise now.

Although the State Court's June 11, 2013 judgment arguably became final as to Ms. Fernandez upon the entry of the Sept. 12, 2013 judgment against Mr. Banos, there is nothing in the record to suggest that the State Court intended that the judgment against the father applied to the daughter. The two judgments reflect different amounts, different interest rates, and the Official Circuit Court Notice describes the Sept. 12, 2013 judgment as directed against "DEF ROGELIO BANOS" without mentioning Ms. Fernandez except in the caption. Under the circumstances, the court is unwilling to infer that the later judgment is binding on Ms. Fernandez as a party. Rather,

the record suggests that the State Court, at the Defendants' invitation, entered separate orders or judgments for Ms. Fernandez and Mr. Banos in the Ingham County collection action.

As for Defendants' suggestion, based on its advocacy of Judge Rhodes's position in his *Phillips* concurrence, 434 B.R. at 492, and Judge Tucker's opinion in *In re Pixley*, 504 B.R. 852, 857 (Bankr. E.D. Mich. 2014), that Ms. Fernandez's default constitutes an admission of the well-pleaded allegations in the State Court complaint, that conclusion is no doubt true as a procedural matter, and as far as it goes, but it does not resolve the issue of the nature of the loan here.[8]

First, the deemed admission, like any other admission of a party, is simply a data point, not a conclusive or preclusive presumption in this court's view, because (as noted above) the fact admitted (i.e., the nature of the loan as a "student loan") was not necessary to the State Court's judgment against Ms. Fernandez. Moreover, the record includes other admissions from Ms. Fernandez that point in a different direction regarding the nature of the loan. *See, e.g.*, Complaint (ECF No. 9) at ¶ 17 ("Plaintiff borrowed $25,578.00 in a private education loan above and beyond the Cost of Attendance."). Conflicting admissions create questions of fact that cannot be resolved in the current procedural context, where the court must accept the Plaintiff's allegations as true.

Second, it is not entirely clear that the facile reference to "student loan" in NCSLT's State Court complaint is a well-pleaded factual allegation or a mere legal conclusion, or that the term

---

[8] Michigan's general pleading rule (M.C.R. 2.111), like its federal analog (Rule 8), establishes that the failure to deny allegations in a pleading that requires a response (other than allegations regarding damages or the nature of relief demanded) constitutes an admission. *See* M.C.R. 2.111(E)(1). Unlike the federal rule, however, a Michigan court litigant may limit the effect of the admission: pleading "no contest," rather than suffering a default, makes the admission effective "only for purposes of the pending action." M.C.R. 2.111(C) and (E)(3). This court cannot give less effect to an admission by default than one by pleading no contest, so the court concludes that Michigan procedure supports treating the failure to deny the allegations in NCSLT's State Court complaint as admissions by Ms. Fernandez that could be used in a later action. There is nothing in Michigan's court rules, however, to suggest that the admission by default, standing alone, has issue preclusive effect in another proceeding. Indeed, giving issue preclusive effect to a deemed admission that was immaterial to the ultimate judgment would contravene Michigan case law discussed in the text of the opinion, not to mention the common sense problem of treating a deemed admission (an admission by omission) as something "actually litigated" in a case where issue had not been joined and where the trier of fact had no reason to determine the nature of the debt before entering judgment against Ms. Fernandez.

"student loan" is equivalent to the statutory term of art ("qualified educational loan") included within § 523(a)(8)(B). *Cf. Felsen*, 442 U.S. at 135 (limiting preclusive effect of prior state proceedings because "the state-law concept is likely to differ from that adopted in the federal statute.").

On this record, although Ms. Fernandez was a party to the State Court proceeding, the court does not regard the judgment against Mr. Banos as binding on her in her capacity as "party," as opposed to "privy."

### 2.    *Privity Argument*

The Defendants argue that "privity" between a party and a non-party "traditionally requires both a 'substantial identity of interests' and a 'working functional relationship' in which the interests of the nonparty are presented and protected by the party in the litigation." *Adair v. Michigan*, 680 N.W.2d 386, 396 (Mich. 2004). Defendants' Supplemental Brief at p.2. In fact, the application of the privity doctrine usually involves an archetypical relationship such as "a principal to an agent, a master to a servant, or an indemnitor to an indemnitee," or a person who "after rendition of the judgment, has acquired an interest in the subject matter affected by the judgment through one of the parties, as by inheritance, succession, or purchase." *Peterson Novelties, Inc. v. City of Berkley*, 672 N.W.2d 351, 359 (Mich. App. 2003). The *Adair* court itself described the "substantial identity of interests" and "working functional relationship" formulation as the "outer limits" of the privity doctrine.

Here, we do not have the classic example of a relationship giving rise to a privity finding, and it is certainly clear that the mere existence of a familial relationship is not, by itself, sufficient to establish privity. *Phinisee v. Rogers*, 582 N.W.2d 852 (Mich. App. 1998) (mother and daughter had differing stake in paternity litigation). Instead, the Defendants rely on the "outer limits" of the

doctrine by asking the court to examine the interests of Ms. Fernandez and her father and the "functional relationship" between them, considering, naturally, whether Mr. Banos presented and protected the interests of Ms. Fernandez, his supposed privy.

Although the same underlying loan transaction is at issue now and when the State Court entered judgment against the Plaintiff's father, it is not fair to infer that the interests of Ms. Fernandez and her father were substantially identical because she had not obtained a discharge of debts at that time, and by then already had a seemingly final judgment entered against her.

Similarly, whether the loan is a "qualified education loan" for purposes of Mr. Banos's discharge might have depended on whether Ms. Fernandez was "a dependent of the taxpayer [Mr. Banos] as of the time the indebtedness was incurred." 26 U.S.C. § 221(d)(1)(A). The record shows that Mr. Banos lived in Lansing and Ms. Fernandez, in Toledo, suggesting perhaps (by inference) that there was no dependency at the time, and that their interests and relationship to the indebtedness may not be substantially "identical." Moreover, on the current record, it is not at all clear that Mr. Banos adequately protected his own interests, let alone his daughter's, as it appears from the record that he defended the action in *propria persona*, did not respond to NCSLT's requests for admissions (resulting in deemed admissions), and did not formally oppose the summary judgment motion.

As the party asserting the preclusive effect of the State Court's judgment, the Defendants have the burden of proving the preclusion doctrine applies, as their own cited authority makes clear. *See Sloan v. City of Madison Heights*, 389 N.W.2d 418, 422 (Mich. 1986). Because the relationship between Ms. Fernandez and her father does not fall within the classic paradigm for finding privy as a matter of law, the court must find privity, if it all, as a matter of fact. On the present record, the court is not satisfied that the Defendants have met their burden of establishing

privity such that the separate judgment against Mr. Banos should bind Ms. Fernandez. The issue remains open for later decision on a more developed record or perhaps at trial.

C.     Loans Within § 523(a)(8)

1.     *Waiver of § 523(a)(8)(A)*

The Defendants' papers mention § 523(a)(8)(A) as a basis for excepting the debt from discharge without developing the argument, and always in the same breath as their discussion of § 523(a)(8)(B), as if the two were related. The Defendants did not develop an argument to support the mere assertion that § 523(a)(8)(A) somehow applies, such as by describing any government or nonprofit program or institution involved in funding the loan. Although the court is not required to scour the record to find support for Defendants' position, the most that can be said on the present record is that Ms. Fernandez acknowledged in the loan documents that a non-profit organization, The Educational Resources Institute, Inc., or "TERI," sold the bank a guaranty of the loan. *See* Shermeta Motion at Exh. A (ECF No. 18-1, p.5 of 6) at ¶ 12. Accordingly, the court will reject the inadequately briefed argument for purposes of these Motions, and focus instead on whether the loan is a "qualified education loan" under § 523(a)(8)(B). *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (issues adverted to in a perfunctory manner are deemed waived).

2.     *Qualified Education Loans Under § 523(a)(8)(B)*

As the Sixth Circuit recently observed in *Conti, supra*, for non-governmental student loans within the purview of § 523(a)(8)(B), the Bankruptcy Code borrows the definition of "qualified education loan" from § 221(d) of the Internal Revenue Code:

> The term "qualified education loan" means any indebtedness incurred by the taxpayer solely to pay qualified higher education expenses—
>
> (A) which are incurred on behalf of the taxpayer, the taxpayer's

> spouse, or any dependent of the taxpayer as of the time the indebtedness was incurred,
>
> (B) which are paid or incurred within a reasonable period of time before or after the indebtedness is incurred, and
>
> (C) which are attributable to education furnished during a period during which the recipient was an eligible student.

26 U.S.C. § 221(d)(1); *Conti*, 982 F.3d at 448. There does not appear to be any dispute about subparts A and B of the definition; instead, the issue is mainly whether Ms. Fernandez incurred the indebtedness "solely to pay qualified education expenses," which implicates the opening clause of the statutory definition as well as subpart C.

As the Sixth Circuit's decision in *Conti* makes clear, "the court should look to the initial purpose of [the] loans, rather than their actual uses, to determine whether they fall within the scope of (8)(B)." *Id.* In an effort to meet their summary judgment burden under Rule 56 to establish the loan's purpose,[9] and in addition to their preclusion arguments rejected above, the Shermeta Defendants offer several loan origination documents, relying exclusively on the recitals therein. (ECF No. 18-1, Exh. A). More specifically, they point to the boilerplate "Borrower's Certification" within the loan document, where Ms. Fernandez promises to use the funds only for "educational expenses at the School" and immediately repay "any funds that I receive which are not to be used or are not used for educational expenses related to attendance at the School for the academic period stated." *See* Shermeta Motion (ECF No. 18-1) at Exh. A, p.32. They also identify portions of the loan form in which she acknowledges the supposed relationship between this loan and a future bankruptcy:

> I acknowledge that the requested loan is subject to the limitations on dischargeability in bankruptcy contained in Section 523(a)(8) of the United States

---

[9] *Celotex*, 477 U.S. at 323.

Bankruptcy Code.  Specifically, I understand that you have purchased a guaranty of this loan, and that this loan is guaranteed by The Education Resources Institute, Inc. ("TERI"), a non-profit institution.

*Id.* at Exh. A, p.5 at ¶ 12. The court does not regard the Defendants' reference to § 523(a)(8) as urging a finding of prepetition waiver of discharge -- an obviously problematic assertion as a matter of public policy. *See, e.g., Giaimo v. Detrano (In re Detrano)*, 222 B.R. 685, 688 (Bankr. E.D.N.Y. 1998) ("As a matter of superseding federal bankruptcy policy . . . a prepetition waiver of a discharge of a particular debt or of all debts is against public policy and unenforceable"); *First Ga. Bank v. Halpern (In re Halpern)*, 50 B.R. 260, 262 (Bankr. N.D. Ga. 1985) ("Policy considerations dictate that dischargeability questions cannot be predetermined either by a state court or by agreement of the parties prior to or in anticipation of the possible filing of a bankruptcy case."), *aff'd*, 810 F.2d 1061 (11th Cir. 1987). Instead, it appears that the Defendants cite this origination-related acknowledgement as Ms. Fernandez's admission about the nature of the debt, as a nondischargeable student loan. Nevertheless, there is no basis for treating the admission as conclusive or dispositive, given other parts of the record the court must consider. The admission based on the lender's boilerplate is but one of the ingredients in the summary judgment soup; other ingredients point in different directions, especially given the inferences the court must draw in favor of Ms. Fernandez under Rule 56.

For example, the court must consider the remarkable disparity between the $7,467.00 that it accepts as the cost of attendance (based on the Complaint) and the $26,890.00 actually disbursed to Ms. Fernandez's father at loan closing (included in the loan documents as part of Exh. B). In response to this point, Defendants argue that because she did not immediately repay any funds, the court should infer that Ms. Fernandez must have had approximately $20,000.00 in "qualified

higher education expenses" (broadly defined in the statute)[10] beyond the $7,467.00 Community College tuition for the four month "Academic Period" identified in the Credit Agreement. The court, however, is not permitted to draw inferences in favor of the moving party under the applicable rules, only the non-moving party, here Ms. Fernandez.

Moreover, another inference from the record is possible, namely that NCSLT "with knowledge of the scope and application of section 523(a)(8), has exploited the statutory framework protecting qualified education loans from discharge in bankruptcy in an attempt to appropriate bankruptcy protection for a large universe of dischargeable consumer debt." Complaint (ECF No. 9) at ¶ 1. Indeed, this is a factual allegation that the court must accept as true, at least under Rule 12(b)(6) and 12(c). *See supra* Part IV.A. Ms. Fernandez's admissions in the loan documents about the nature of the debt, juxtaposed against the reasonable inference (based on the gross disparity between the cost of attending community college for one semester compared to the funds disbursed) simply creates a factual question, a genuine and material one at that.

The Sixth Circuit's decision in *Conti*, *supra*, does not dictate a different result because the court in that case considered a very different summary judgment record, one which established that: (1) the lender disbursed the funds directly to the educational institution; (2) the loan documents included a section where the school financial aid office can certify "the student applicant's year, enrollment status, loan amount (not to exceed the cost of education when combined with other financial aid), and recommended disbursement dates"; and (3) the loan did not exceed the cost of attendance, as the educational institution certified with respect to several of the loans at issue in that case. In Ms. Fernandez's case, the summary judgment record shows that

---

[10] *See* 26 U.S.C. § 221(d)(1) (incorporating definition of "qualified higher education expenses" from 20 U.S.C. § 1087*ll*). Given the record on these Motions, and the Sixth Circuit's clarification in *Conti* that the borrower's actual use of the loan proceeds does not control, the court need not peel the definitional onion any further.

the lender disbursed the funds not to the Community College but to the borrower's father; the loan documents include no place for the institution to certify costs of attendance and other material facts; and reasonable inferences at this stage of the proceeding permit the court to conclude that the loan exceeded the cost of attendance by about three times. The court cannot say, as a matter of law, that Ms. Fernandez incurred the debt "*solely* to pay qualified higher education expenses." 26 U.S.C. § 221(d) (emphasis added).

Although the court agrees with the observation in *Conti* that allowing debtors to discharge their student loans simply because they misuse the funds for non-educational expenses would not further Congress' goal of preserving the financial integrity of the student loan system, *Conti,* 982 F.3d at 449, if a debtor's misuse of funds involves fraud or misrepresentation, the Bankruptcy Code includes a more specific and robust provision to address such issues, as counsel for Ms. Fernandez conceded at oral argument. *See* 11 U.S.C. § 523(a)(2)(A).

## V.      CONCLUSION AND ORDER

The court might reach a different decision after discovery or trial, but at this stage of the proceedings the record plainly does not warrant dismissal and the finding that the debt is excepted from discharge under § 523(a)(8), given the court's view of the Defendants' preclusion arguments and the procedural edict to draw inferences, and construe the pleadings, in favor of Ms. Fernandez. As predicted in an earlier scheduling order, the court will reschedule the Rule 16 conference at which it will work with the parties to set pretrial deadlines for discovery, further motion practice, and trial. Until then, of course, nothing precludes the parties from pursuing alternative dispute resolution or otherwise discussing settlement, and the court certainly encourages such discussions, given what will likely involve a difficult case for the Defendants to prove, and considerable risk to the Plaintiff if they succeed.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Motions (ECF Nos. 18 and 20) are DENIED.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Memorandum of Decision and Order pursuant to Rule 9022 and LBR 5005-4 upon Kristen L. Krol, Esq., David A. Lerner, Esq., Deborah Lujan, Esq., and Michael D. Alltmont, Esq.

END OF ORDER

**IT IS SO ORDERED.**

**Dated February 10, 2021**



Scott W. Dales
United States Bankruptcy Judge